UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

**GENERAL ELECTRIC COMPANY,**

                          Plaintiff,

    - against -

**FEUZ MANUFACTURING, INC.,**
**GARY A. FEUZ** (Individually),
**WESLEY FEUZ** (Individually),
and Other Officers, Directors, and
Shareholders of Feuz Manufacturing, Inc.
Whose Identities Are Currently Unknown,

                          Defendants.

**COMPLAINT**

Civil Action No.:

JURY TRIAL DEMANDED

---

Plaintiff General Electric Company ("GE" or "Plaintiff"), by and through its attorneys, Bond, Schoeneck & King, PLLC, alleges for its complaint as follows:

## PARTIES

1. Plaintiff GE is a New York corporation, with a subdivision known as GE Energy, which maintains offices and manufacturing facilities at One River Road, Schenectady, New York.

2. Defendant Feuz Manufacturing, Inc. ("FMI") is a New York corporation with its principal executive office at 898 Currybush Road, Schenectady, New York.

3. Upon information and belief, at all times relevant herein, Defendant Gary A. Feuz was the chairman and/or CEO of FMI, and an officer and/or director of FMI.

4. Upon information and belief, at all times relevant herein, Defendants Gary A. Feuz and Wesley Feuz were key employees of FMI; and at all times relevant herein acted with

apparent and/or actual authority on behalf of FMI to advance FMI's financial interest and their own personal interest as individuals.

5. All claims set forth herein, with the exception of the breach of contract claim, are directed to FMI and the Individual Defendants, Gary Feuz and Wesley Feuz, as well as all others currently unknown and unidentified officers, directors and key employees with authority to act on behalf of FMI.

6. Throughout the following paragraphs, all references to "the Individual Defendants" refer to defendants Gary Feuz, Wesley Feuz and the unknown officers, directors and employees referred to in paragraph "5" above.

7. Upon information and belief, the Individual Defendants acted as agents for and in concert with FMI, were acting for and on behalf of FMI, were controlling figures in FMI, were instrumental in causing the infringements of protected GE proprietary information by FMI, and all personally participated in and exercised dominion and control over FMI in its unlawful and tortion acts.

## JURISDICTION

8. The courts of the United States have federal question jurisdiction over this action because this is an action brought under the federal Lanham Act, 15 U.S.C. § 1125.

9. The courts of the United States have pendent jurisdiction over the state law claims asserted herein.

## VENUE

10. Venue is proper in the United States District Court for the Northern District of New York because upon information and belief, the Defendants are residents of Schenectady County and FMI has its principal place of business in Schenectady County.

## BACKGROUND

11. GE Energy in Schenectady, New York, manufactures and sells gas turbines for power generation purposes to customers around the world.

12. Gary A. Feuz purchased FMI in 1984.

13. Over the subsequent twenty years, FMI manufactured and supplied parts to GE Energy for its gas turbines, including shrouds, seal pins, rotors, and other turbine parts.

14. GE Purchase Orders governed every GE purchase of FMI-manufactured parts.

15. Each applicable GE Purchase Order contained terms and conditions of purchase ("terms and conditions").

16. A copy of the terms and conditions in effect from April 2003 through September 2005 appears as **Exhibit A** to this Complaint.

17. As part of the commercial course of dealing between FMI and GE, GE periodically sent FMI engineering drawings and specifications containing proprietary and unique design information for various parts FMI was manufacturing and selling to GE.

18. These GE engineering drawings and specifications were the work of GE engineers and contained specific language designating them as the confidential and proprietary property of GE.

19. GE sent these drawings and specifications to FMI in order to convey to FMI specifically how GE wanted the parts in question manufactured.

20. The drawings and specifications contained GE's internal design and development work, the result of millions of dollars of investment and years of engineering refinement and creativity tailored specifically to GE's needs.

21. The Terms and Conditions specifically provided that "Seller shall keep confidential any technical, process, proprietary or economic information derived from drawings, 3D or other models, specifications and other data furnished by Buyer in connection with this Order and shall not divulge, directly or indirectly, such information for the benefit of any other party without Buyer's prior written consent." Exhibit A, ¶ 18.

22. The Terms and Conditions also provided that "Seller shall use Buyer's property only to meet Buyer's orders, and shall not use it, disclose it to others or reproduce it for any other purpose." Exhibit A, ¶ 4.

23. FMI and the Individual Defendants knew that these drawings were GE proprietary information that were not to be disseminated to third parties, as specifically provided in the Terms and Conditions.

24. GE never provided any consent, written or otherwise, to allow FMI to use GE's engineering drawings, specifications, or designs for any purpose other than manufacturing and selling the specified parts to GE to fulfill specific GE purchase orders.

25. At all times relevant herein, FMI was bound by the Terms and Conditions.

26. In 2004, an employee of FMI reported to GE that FMI was using GE's proprietary engineering drawings, specifications, and designs to manufacture and sell parts to GE's competitors.

27. Upon information and belief, when an FMI employee raised concerns to Wesley Feuz that such actions by FMI might be unlawful, Mr. Feuz replied that it was only unlawful to get caught.

28. An investigation by GE uncovered numerous instances in which FMI and the Individual Defendants, used GE's proprietary engineering drawings, specifications, and

designs to manufacture and sell parts to GE's competitors. Photographs showing evidence of such instances appear as **Exhibit B** to this Complaint.

29.  In addition, GE obtained a list of invoices to GE competitors showing that those competitors purchased parts from FMI that FMI had identified using GE's own part numbers. A copy of this list appears as **Exhibit C** to this Complaint.

30.  GE also obtained a copy of an invoice from FMI to a GE competitor that attached a GE proprietary engineering drawing.  **Exhibit D** hereto is a copy of this invoice.

31.  FMI and the Individual Defendants, by their actions, intentionally and knowingly violated the Terms and Conditions to which FMI was contractually bound.

32.  When GE confronted Gary Feuz regarding these allegations, Feuz responded by stating that "Feuz Manufacturing understands the seriousness of the violations and has fully complied with your requests and will continue to adhere to all of your requests going forward." Feuz also stated that FMI had "engage[d] in the misuse of GE's property" and used GE's property "in an[] unauthorized manner." See July 17, 2004 Email by Gary A. Feuz to GE Counsel, **Exhibit E** hereto.

33.  Because of FMI's breach of GE's rights, GE ultimately terminated its business relationship with FMI.

34.  GE required FMI to correspond with its non-GE customers stating that FMI had agreed to "immediately cease and desist using GE's IP to assist in the manufacture of parts/products for Feuz's non-GE customers." This letter, as executed by Gary A. Feuz, appears as **Exhibit F** to this Complaint.

35.  Upon information and belief, in December 2004 FMI sold its physical plant, machinery, manufacturing and office space to VStream Manufacturing, Inc., for $3 million.

191729.2 9/24/2007

36. Upon information and belief, during the period from 1984-2004, sales to GE constituted the majority of FMI's total sales, and often as much as 70% of FMI's sales in any given year.

37. On April 24, 2007, FMI commenced an action against GE in New York Supreme Court, Schenectady County, alleging that GE owed it some $533,000 for FMI orders in 2003 and 2004.

38. Upon information and belief, the value of the products FMI sold to non-GE customers using GE's proprietary engineering drawings, specifications, and designs, was more than $2 million.

## FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS (Lanham Act)

39. FMI and the Individual Defendants falsely represented to non-GE customers that GE's engineering drawings, specifications, and designs belonged to FMI.

These actions referred to above were in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1).

40. FMI and the Individual Defendants made false or misleading representations regarding GE-designed goods in interstate commerce, commercially promoting and selling those goods as if they were designed by (and belonged to) FMI.

This conduct caused damage to GE in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1).

41. FMI's and the Individual Defendants actions damaged GE by depriving GE of payments that GE was lawfully entitled to receive in exchange for the use and sale of its drawings, specifications, designs, and products, as well as related services.

## SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS
### (Unfair Competition)

42. FMI and the Individual Defendants unfairly competed with GE by representing to third parties that GE's engineering drawings, specifications, and designs belonged to FMI.

43. FMI's and the Individual Defendants actions damaged GE by depriving GE of payments that GE was lawfully entitled to receive in exchange for the use and sale of its drawings, specifications, designs, and products.

## THIRD CAUSE OF ACTION AGAINST FMI ONLY (Breach of Contract)

44. GE provided its proprietary engineering drawings, specifications, and designs to FMI pursuant to the Terms and Conditions.

45. Under the Terms and Conditions, FMI specifically agreed not to disclose GE's proprietary information to third parties without written consent.

46. FMI also specifically agreed under the Terms and Conditions not to use GE's proprietary information for any purpose other than completing its obligations to GE under the purchase order agreements.

47. Without GE's consent, and in violation of the Terms and Conditions, FMI disclosed GE's proprietary engineering drawings, specifications, and designs to third parties and used them to make sales of GE-designed parts to third parties.

48. FMI's breach of its agreements with GE unlawfully deprived GE of payments that GE was lawfully entitled to receive in exchange for the use and sale of its drawings, specifications, designs, and products.

## FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS (Fraud)

49. Upon information and belief, FMI and the Individual Defendants fraudulently induced GE to continue to enter into purchase order agreements with FMI by concealing from

GE the fact that FMI was already breaching its previous agreements with GE by misusing and disseminating GE's proprietary drawings, specifications, and designs.

50.   FMI and the Individual Defendants engaged in a pattern of willful and deliberate violation of GE's rights, a pattern that continued over a period of several years.

51.   FMI's and the Individual Defendants' fraudulent concealment of its misuse and unlawful dissemination of GE's proprietary information damaged GE by inducing it to continue sharing its proprietary information with FMI and the Individual Defendants, allowing FMI and the Individual Defendants to continue receiving revenue based on GE's drawings, specifications, and designs that should have gone to GE.

### FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS (Conversion)

52.   FMI and the Individual Defendants converted GE's drawings, specifications, and designs by misusing and disseminating them to third parties without permission, thus depriving GE of its dominion and ownership of them.

53.   FMI's and the Individual Defendants conversion damaged GE by depriving GE of payments that GE was lawfully entitled to receive in exchange for the use of its drawings, specifications, and designs.

### SIXTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
### (Theft of Trade Secrets)

54.   The proprietary drawings, specifications, and designs GE provided to FMI and the Individual Defendants pursuant to purchase orders contained protected trade secrets.

55.   Under the governing purchase orders, FMI specifically agreed to protect these GE trade secrets.

56. FMI and the Individual Defendants converted GE's trade secrets and violated its agreement to protect them when it used GE's proprietary drawings, specifications, and designs without permission and disseminated them to third parties.

57. FMI's and the Individual Defendants' theft of GE's trade secrets damaged GE by depriving GE of payments that GE was lawfully entitled to receive in exchange for the use and sale of its drawings, specifications, and designs.

## PRAYER FOR RELIEF

WHEREFORE, GE demands judgment against all defendants, jointly and severally, as follows:

(1) Damages in the following amounts:

(a) On Count I, in an amount to be determined by the Court, but upon information and belief, at least $2,000,000;

(b) On Count II, in an amount to be determined by the Court, but upon information and belief, at least $2,000,000;

(c) On Count III, against FMI only, in an amount to be determined by the Court, but upon information and belief, at least $2,000,000;

(d) On Count IV, in an amount to be determined by the Court, but upon information and belief, at least $2,000,000;

(e) On Count V, in an amount to be determined by the Court, but upon information and belief, at least $2,000,000;

(f) On Count VI, in an amount to be determined by the Court, but upon information and belief, at least $2,000,000;

(2)   Injunctive relief requiring all defendants (a) to cease and desist from using any GE drawings, specifications, or designs for any purpose whatsoever, and (b) to return any and all GE drawings, specifications, designs or other proprietary information;

(3)   Plaintiff's attorneys' fees and costs in pursuing this action, pursuant to 15 U.S.C. § 1117; and

(4)   Such other and further relief as the Court deems just and proper.

Dated: September 25, 2007

BOND, SCHOENECK & KING, PLLC

By: _____
Arthur J. Siegel (101387)
William E. Reynolds (512175)
111 Washington Avenue
Albany, NY 12210
Telephone: (518) 533-3000
Facsimile: (518) 533-3299

Attorneys for Plaintiff
 General Electric Company

TO:   Scott C. Paton, Esq.
      Attorney for Defendants
      McNamee, Lochner, Titus & Williams, P.C.
      677 Broadway, P.O. Box 459
      Albany, New York 12201-0459