EXHIBIT A

| P28A-AL-0003<br>REV. E | **g**<br>_GE Power Systems_ | Page 2 of 11 |
| --- | --- | --- |

## STANDARD TERMS OF PURCHASE

1.      **ACCEPTANCE OF TERMS.**  Seller agrees to be bound by and to comply with all terms set forth in this Order, including any amendments, supplements, specifications and other documents referred to in this Order.  Acknowledgement of this Order, including without limitation by beginning performance of the work called for by this Order, shall be deemed acceptance of this Order.    The terms printed on this Order take precedence over any alternative terms in any other document connected with this transaction unless such alternative terms are expressly incorporated by reference on the face of this Order.  This Order does not constitute an acceptance by Buyer of any offer to sell, any quotation, or any proposal.  Reference in this Order to any such offer to sell, quotation, or proposal shall in no way constitute a modification of any of the terms of this Order.  **ANY ATTEMPTED ACKNOWLEDGMENT OF THIS ORDER CONTAINING TERMS INCONSISTENT WITH OR IN ADDITION TO THE TERMS OF THIS ORDER IS NOT BINDING UNLESS SPECIFICALLY ACCEPTED BY BUYER IN WRITING.**

2.      **PRICES AND PAYMENTS.**   All prices are firm and shall not be subject to change.  Seller's price includes all sovereign, state and local sales, use, excise, value added, privilege, payroll, occupational and any other taxes, fees, or duties applicable to the goods or services.  Seller shall ensure that if any value-added or similar tax is applicable, that it is invoiced in accordance with the applicable rules so as to allow the Buyer to reclaim that value-added or similar tax from the appropriate government authority.  Neither party is responsible for taxes on the other party's income or the income of the other party's personnel or subcontractors.  If the Buyer is required by government regulation to withhold taxes for which the Seller is responsible, Buyer will deduct such withholding tax from payment to Seller and provide to Seller a valid tax receipt in Seller's name.  If Seller is exempt from such withholding taxes as a result of a tax treaty or other regime, Seller shall provide to Buyer a valid tax treaty residency certificate or other tax exemption certificate at a minimum of 30 days prior to payment being due.  Unless otherwise stated on the face of this Order, payment terms are Net due 75 days from the Payment Start Date.  The Payment Start Date is the later of the required date identified on the Order, the received date of the goods or services in the Buyer's receiving system, or the date of receipt of valid invoice by Buyer.  The received date of the goods in the Buyer's receiving system will occur:  a) in the case of materials shipped direct to a customer of Buyer (MSD, including Balance of Plant) including materials sent to a non-Buyer/non-Customer facility in accordance with this Order to be incorporated into MSD, within 48 hours of Buyer being presented with a valid bill of lading (in the case of material) confirming that the goods have been transported from the Seller's facility or written certification of completion in the case of non-material services provided by Seller to Buyer, b)  in the case where goods are shipped or services are provided directly to or at a non-Buyer/non-Customer facility in accordance with this Order, within 48 hours of Buyer receiving notice from such third party that it has received the goods or services, or c)  in the case where the goods are shipped directly to Buyer or services are performed directly for Buyer, within 48 hours of receipt of such goods or services.  Buyer shall be entitled to take an early payment discount of .0333% of the gross invoice price for each day before 75 days from the Payment Start Date that payment is made.  By way of examples, a discount of 2.46% would correspond to payment made 74 days early (i.e., 1 day after the Payment Start Date) and a discount of 0.33% would correspond to payment made 10 days early (i.e., 65 days from the Payment Start Date).  Seller's invoice shall in all cases bear Buyer's Order number.  Buyer shall be entitled to reject Seller's invoice if it fails to include the Buyer Order number or is otherwise inaccurate, and any resulting delay in payment shall be Seller's responsibility.  Seller warrants that it is authorized to receive payment in the currency stated in this Order.  No extra charges of any kind will be allowed unless specifically agreed in writing by Buyer.  Buyer shall be entitled at any time to set-off any and all amounts owing from Seller to Buyer, or a Buyer parent, affiliate or subsidiary, on this or any other order.  Seller warrants the pricing for any goods or services shall not exceed the pricing for the same or, comparable goods or services offered by Seller to third parties.  Seller shall promptly inform Buyer of any lower pricing levels for same or comparable goods or services and the Parties shall promptly make the appropriate price adjustment.

3.      **DELIVERY AND PASSAGE OF TITLE.**
3.1      Time is of the essence of this Order.  If Seller fails to deliver the goods or complete the services as scheduled, Buyer may assess such amounts as may be set on the face of an Order as liquidated damages for the agreed delay period.  The parties agree that such amounts, if assessed, are an exclusive remedy for the agreed delay period; are a reasonable pre-estimate of the damages Buyer will suffer as a result of delay based on circumstances existing at the time the Order was issued; and are to be assessed as liquidated damages and not as a penalty.  In the absence of agreed to liquidated damages, Buyer shall be entitled to recover damages that it incurs as a result of Seller's failure to perform as scheduled.  Unless expressly stated to the contrary, Buyer's remedies are cumulative and Buyer shall be entitled to pursue any and all remedies available at law or equity.  Further to the foregoing, Seller shall not make material commitments or production arrangements in excess of the amount, or in advance of

| P28A-AL-0003<br><br>REV. E | **g**<br>_GE Power Systems_ | Page 3 of 11 |
|---|---|---|

the time, necessary to meet Buyer's delivery schedule. Should Seller enter into such commitments or engage in such production, any resulting exposure shall be for Seller's account. Unless otherwise stated on the face of this Order: a) goods shipped from within the United States of America ("US") for delivery within the US shall be delivered EXW named point with title passing at Buyer's dock; b) goods shipped from outside the US for delivery within the country of shipment shall be delivered EXW named point, with title passing at that named point; c) goods shipped from outside the US for delivery within the US shall be delivered DAF named point if by rail or truck, FCA originating airport if by air, or FOB port of export if by maritime carriage, with title passing at port of export after customs clearance for goods shipped direct to a non-Buyer facility and at Buyer's dock if shipped to Buyer's facility; and d) goods shipped from outside the United States for delivery to another country outside the United States shall be delivered DAF named point if by rail or truck, FCA destination airport if by air, or DES port of import if by maritime carriage, with title passing on EU goods when the goods leave the territorial land, air or sea space of the EU source country for goods shipped direct to a non-Buyer's EU facility and at Buyer's dock if shipped to Buyers EU facility and title passage on all other goods at port of export after customs clearance for goods shipped direct to a non-Buyer facility and at Port of Import if shipped to Buyer's facility. All delivery designations are INCOTERMS 2000. Goods delivered to Buyer in advance of schedule may be returned to Seller at Seller's expense. Goods ordered by GE Global Sourcing, LLC and shipped to the US from outside the US shall have title pass at port of export. Buyer may specify contract of carriage and named place of delivery in all cases. Failure of Seller to comply with any such Buyer specification shall cause all resulting transportation charges to be for the account of Seller, and give rise to any other remedies available at law or equity. NOTE: In all cases, Seller must provide to Buyer, via the Packing List and the Customs Invoice (as applicable), the Country of Origin of each and every of the goods supplied pursuant to this Order, including in sufficient detail to satisfy applicable trade preferential or Customs agreements, if any.

3.2     If goods will be delivered as Manufacturer Ship Direct (MSD) or for use as Balance of Plant by Buyer, each shipment shall include a detailed, complete bill of material/parts list that lists each component of the equipment purchased by Buyer. Seller shall also include, in each item shipment, the complete bill of materials/parts list for such item and indicate which components of the bill of materials/parts list are included in the shipment as well as those bill of material/parts list components which are not included in the item shipment. This bill of material/parts list shall be included with the packing list for each shipment. When requested by the Buyer, Seller must provide a packing list with values for each item.

3.3     If goods will cross an international border, Seller shall provide a Commercial Customs Invoice as required for Customs clearance. The invoice shall be in English, or destination country specific language, and shall include contact names and phone numbers at Buyer and Seller who have knowledge of the transaction; Buyer order number, Buyer order line item, release number (in the case of a blanket order), part number and detailed description of the merchandise; unit purchase price in currency of the transaction; quantity; INCOTERM and named location; and Country of Origin of the goods. In addition, all goods or services provided by Buyer to Seller for the production of goods not included in the Purchase price shall be separately identified on the invoice (i.e. consigned material, tooling, etc.). Each invoice shall also include the applicable Order number or other reference information for any consigned goods and shall identify any discounts or rebates from the base price used in determining invoice value.

3.4     If goods will be delivered to a destination country having a trade preferential or customs' union agreement ("Trade Agreement") with Seller's country, Seller shall cooperate with Buyer to review eligibility of goods for any special program for Buyer's benefit and provide Buyer required documentation (e.g., NAFTA Certificate, EUR1 Certificate, GSP Declaration, FAD or other Certificate of Origin) to support the applicable special customs program (e.g., NAFTA, EEA, Lome Convention, GSP, EU-Mexico FTA, EU/Mediterranean partnerships etc) to allow duty free or reduced duty for entry of goods into the destination country. Similarly, should any Trade Agreement or special customs program applicable to the scope of this Order exist at any time during the execution of the same, and be of benefit to Buyer in Buyer's judgment, Seller shall cooperate with Buyer's efforts to realize any such available credits, including counter-trade or offset credit value which may result from this Order, and acknowledges that such credits and benefits shall inure solely to Buyer's benefit. Seller shall indemnify Buyer for any costs, fines, penalties or charges arising from Seller's inaccurate documentation or untimely cooperation. Seller shall immediately notify Buyer of any known documentation errors.

4.     **BUYER'S PROPERTY.** Unless otherwise agreed in writing, all tangible and intangible property, including, but not limited to, information or data of any description, tools, materials, drawings, computer software, know-how, documents, equipment or material furnished to Seller by Buyer or specially paid for by Buyer, and any replacement thereof, or any materials affixed or attached thereto, shall be and remain Buyer's personal property. Such property and, whenever practical, each individual item thereof, shall be plainly marked or otherwise adequately identified by Seller as Buyer's property and shall be safely stored separate and apart from Seller's property. Seller shall use Buyer's property only to meet Buyer's orders, and shall not use it, disclose it to others or reproduce it for any other purpose. Such property, while in Seller's custody or control, shall be held at

| | | |
|---|---|---|
| **P28A-AL-0003** <br> **REV. E** | **g** <br> ___*GE Power Systems*___ | **Page 4 of 11** |

Seller's risk, shall be kept insured by Seller at Seller's expense in an amount equal to the replacement cost with loss payable to Buyer and shall be subject to removal at Buyer's written request, in which event Seller shall prepare such property for shipment and redeliver to Buyer in the same condition as originally received by Seller, reasonable wear and tear excepted, all at Seller's expense.  As noted in Section 3.3 above, any consigned material, tooling or technology used in production of the goods shall be identified on the Commercial or Proforma invoice used for international shipments.  Buyer hereby grants a license to Seller to use any information, drawings, specifications, computer software, know-how and other data furnished or paid for by Buyer hereunder for the sole purpose of performing this Order for Buyer.  This license is non-assignable, and is terminable with or without cause by Buyer at any time.  Buyer shall own exclusively all rights in ideas, inventions, works of authorship, strategies, plans and data created in or resulting from Seller's performance under this Order, including all patent rights, copyrights, moral rights, rights in proprietary information, database rights, trademark rights and other intellectual property rights.  All such intellectual property that is protectable by copyright will be considered work(s) made for hire for Buyer (as the phrase "work(s) made for hire" is defined in the United States Copyright Act (17 U.S.C. § 101)) or will give Buyer "first owner" status related to the work(s) under local copyright law where the work(s) was created.  If by operation of law any of such intellectual property is not owned in its entirety by Buyer automatically upon creation, then Seller agrees to transfer and assign to Buyer, and hereby transfers and assigns to Buyer, the entire right, title and interest throughout the world to such intellectual property.  Should Seller, without Buyer's prior written consent and authorization, design or manufacture for sale to any person or entity other than Buyer any goods substantially similar to, or which reasonably can substitute or repair, a Buyer good, Buyer, in any adjudication or otherwise, may require Seller to establish by clear and convincing evidence that neither Seller nor any of its employees, contractors or agents used in whole or in part, directly or indirectly, any of Buyer's property, as set forth herein, in such design or manufacture of such goods.  Further, Buyer shall have the right to audit all pertinent records of Seller, and to make reasonable inspections of Seller facilities, to verify compliance with this section.

5.      **DRAWINGS.**   Any review or approval of drawings by Buyer will be for Seller's convenience and will not relieve Seller of its responsibility to meet all requirements of this Order.

6.      **CHANGES.**   Buyer may at any time make changes within the general scope of this Order in any one or more of the following:  a) drawings, designs or specifications where the goods to be furnished are to be specially manufactured for Buyer; b) method of shipment or packing; c) place and time of delivery; d) amount of Buyer's furnished property; e) quality; f) quantity;  or g) scope or schedule of services.  If any changes cause an increase or decrease in the cost of, or the time required for the performance of, any work under this Order, an equitable adjustment shall be made in the Order price or delivery schedule, or both, in writing.   Any Seller claim for adjustment under this clause will be deemed waived unless asserted within thirty (30) days from Seller's receipt of the change or suspension notification, and may only include reasonable, direct costs that will necessarily be incurred as a direct result of the change.  Any change to this Order shall be made by a signed amendment.

7.      **PLANT ACCESS / INSPECTION:**   All goods and materials related in any way to the goods and services (including without limitation raw materials, components, intermediate assemblies, work in process, tools and end products) shall be subject to inspection and test upon reasonable notice by Buyer and its customer or representative at all times and places, including sites where the goods and services are created or performed, whether they be at premises of Seller, Seller's suppliers or elsewhere, to assess: 1) work quality; 2) conformance with Buyer's specifications; and 3) conformance with Seller's representations, warranties and covenants. If any inspection or test is made on Seller's or its supplier's premises, Seller, without additional charge, shall provide all reasonable access and assistance for the safety and convenience of the inspectors.  If specific Buyer and/or Buyer's customer tests, inspection and/or witness points are included in this Order, the goods shall not be shipped without an inspector's release or a written waiver of test/inspection/witness with respect to each such point; however, Buyer shall not be permitted to unreasonably delay shipment; and Seller shall notify Buyer in writing at least twenty (20) days prior to each of Seller's scheduled final and, if applicable, intermediate test/ inspection/witness points.  Buyer's final inspection, to include acceptance or rejections of the goods, shall be made as promptly as practical after delivery, except as otherwise provided in this Order. Failure to inspect, accept, reject or detect defects by inspection shall neither relieve Seller from responsibility for such goods as are not in accordance with the Order requirements nor impose liabilities on Buyer.  Seller shall provide and maintain an inspection and process control system acceptable to Buyer and its customer covering the goods and services and shall keep complete records available to Buyer and its customer for three years after completion of this Order.

8.      **REJECTION.**  If any element of performance pursuant to this Order is found at any time prior to expiration of warranty to be defective or otherwise not in conformity with the requirements of this Order, including any applicable drawings and specifications, whether such defect or non-conformity relates to scope provided by Seller or a direct or indirect supplier to Seller, Buyer, in addition to other rights, remedies and choices it may have by contract or by law, and in addition to seeking recovery of any and all damages and costs emanating therefrom, at its option and sole discretion, may at Seller's expense:  a) rescind this

| P28A-AL-0003<br><br>REV. E | **g**<br><br>_**GE Power Systems**_ | Page 5 of 11 |
| --- | --- | --- |

Order without liability; b) reject and return such goods or services; c) take action to cure all defects and/or bring the goods into conformity with all requirements, allocating all costs, expenses (including material, labor and handling costs, and any required re-performance of value added machining or other service), and other reasonable charges for Seller's account; d) withhold total or partial payment; and/or e) require Seller to immediately re-perform any defective portion of the services performed and/or require Seller to immediately replace non-conforming goods with goods that conform to this Order.  For any repairs or replacements, Seller shall perform any tests requested by Buyer to verify conformance to this Order.  Cost for tests shall be born by Seller.

9.        **WARRANTIES.**  Seller warrants that all goods and services provided pursuant to this Order, whether provided by Seller or a direct or indirect supplier of Seller, will be free of any claims of any nature, including without limitation title claims, and will cause any lien or encumbrance asserted to be discharged, at its sole cost and expense, within thirty (30) days of its assertion (provided such liens do not arise out of Buyer's failure to pay amounts not in dispute under this Order or an act or omission of Buyer).   Seller warrants and represents that all such goods and services will be new and of merchantable quality, not used, rebuilt or refurbished material unless approved in writing by Buyer, free from all defects in design, workmanship and material, and will be fit for the particular purpose for which they are intended.  Such goods and services will be provided in strict accordance with all specifications, samples, drawings, designs, descriptions or other requirements approved or adopted by Buyer.  Any attempt by Seller to limit, disclaim, or restrict any such warranties or remedies by acknowledgment or otherwise shall be null, void and ineffective.  The foregoing warranties shall, in the case of turbine plant related goods and services, apply for a period of twenty-four (24) months from the Date of Commercial Operation of the turbine plant (in the case of Nuclear power related goods and services thirty-six (36) months from the Date of Commercial Operation Date of the nuclear power plant) which Buyer supplies to its customer, or forty-eight (48) months, plus delays such as those due to non-conforming goods and services, from the date of delivery of all goods and services from Seller to destination, whichever occurs first.  (_Date of Commercial Operation_ means the date on which the plant has successfully passed all performance and operational tests required by Buyer's customer for Commercial Operation.)  In all other cases the warranty shall apply for twenty-four (24) months from delivery, or such longer period of time as customarily provided by Seller, plus delays such as those due to non-conforming goods and services.  The warranty shall run to Buyer, its successors, assigns, and the users of goods and services covered by this Order.  If any goods or services are found to be defective during the warranty period then, in addition to other rights, remedies and choices as it may have by law, contract or at equity, Buyer at its option and sole discretion and at Seller's expense may: (a) reject and return such goods and services; (b) require Seller to remove, ship and reinstall/reperform nonconforming goods and/or services with goods and/or services that conform to all the requirements of this Purchase Order; and/or (c) take such actions as may be required to cure all defects and/or bring the goods and services into conformity with all the requirements of this Order, in which event all costs and expenses including material, labor and handling costs and charges (inclusive of any required re-performance of value added machining or other service), incurred by Buyer shall be for Seller's account.   Any repaired or replaced part, or re-performed services shall carry warranties on the same terms as set forth above, with the warranty period being the later of the original unexpired warranty or twenty-four (24) months after repair or replacement.

10.        **SUSPENSION.**  Buyer may at any time, by notice to Seller, suspend performance of the work for such time as it deems appropriate.  Upon receiving notice of suspension, Seller shall promptly suspend work to the extent specified, properly caring for and protecting all work in progress and materials, supplies, and equipment Seller has on hand for performance.  Upon Buyer's request, Seller shall promptly deliver to Buyer copies of outstanding purchase orders and subcontracts for materials, equipment and service for the work, and shall take such action relative to such purchase orders and subcontracts as Buyer may direct.  Buyer may at any time withdraw the suspension as to all or part of the suspended work by written notice specifying the effective date and scope of withdrawal. Seller shall resume diligent performance on the specified effective date of withdrawal.  All claims for increase or decrease in the cost of, or the time required for the performance of any work caused by suspension shall be pursued pursuant to, and consistent with, the Changes clause.

11.        **TERMINATION.**  Buyer may terminate all or any part of this Order at any time by written notice to Seller.  Upon termination (other than due to Seller's insolvency or default including failure to comply with this Order), Buyer and Seller shall negotiate reasonable termination costs consistent with costs allowable under Article 6 and identified by Seller within 30 days of termination notice, unless the parties have agreed to a termination schedule in writing.

12.        **DEFAULT.**  Except for delay due to causes beyond the control and without the fault or negligence of Seller and all of its suppliers (lasting not more than 60 days), Buyer may by written notice of default, terminate the whole or any part of this Order if Seller: a) fails to perform within the time specified or any written extension granted by Buyer; b) fails to make progress which , in Buyer's reasonable judgment, endangers performance of this Order in accordance with its terms; or c) fails to comply with any of the terms of this Order.  Such termination shall become effective if Seller does not cure such failure within ten (10) days of receiving notice of default.  Upon termination, Buyer may procure at Seller's expense and upon terms it deems appropriate, goods

| P28A-AL-0003<br>REV. E | **g**<br>*GE Power Systems* | Page 6 of 11 |
|---|---|---|

or services similar to those so terminated. Seller shall continue performance of this Order to the extent not terminated and shall be liable to Buyer for any excess costs for such similar goods or services. As an alternate remedy and in lieu of termination for default, Buyer, at its sole discretion, may elect to extend the delivery schedule and/or waive other deficiencies in Seller's performance, making Seller liable for any costs, expenses or damages arising from any failure of Seller's performance. If Seller for any reason anticipates difficulty in complying with the required delivery date, or in meeting any of the other requirements of this Order, Seller shall promptly notify Buyer in writing. If Seller does not comply with Buyer's delivery schedule, Buyer may require delivery by fastest method and charges resulting from the premium transportation must be fully prepaid by Seller. Buyer's rights and remedies in this clause are in addition to any other rights and remedies provided by law or under this Order.

13.     **INSOLVENCY/PROLONGED DELAY.**  If Seller ceases to conduct its operations in the normal course of business, fails to meet its obligations as they mature, if any proceeding under the bankruptcy or insolvency laws is brought by or against Seller, or a receiver for Seller is appointed or applied for, or an assignment for the benefit of creditors is made, or an excused delay (or the aggregate time of multiple excused delays) lasts more than 60 days, Buyer may immediately terminate this Order without liability, except for goods or services completed, delivered and accepted within a reasonable period after termination (which will be paid for at the Order price).

14.     **INDEMNITY AND INSURANCE.**  Seller shall defend, indemnify, release and hold harmless the Buyer, its directors, officers, employees, agents representatives, successors and assigns, whether acting in the course of their employment or otherwise, against any and all suits, actions, or proceedings, at law or in equity, and from any and all claims, demands, losses, judgments, damages, costs, expenses, or liabilities (including without limitation claims for personal injury or property damage, claims or damages payable to customers of Buyer, and breaches of Sections 17 and/or 18 below) arising from any act or omission of Seller, its agents, employees, or subcontractors, except to the extent attributable to the sole and direct gross negligence of Buyer. Seller shall maintain Comprehensive General Liability – Bodily Injury/Property Damage (including coverage for contractual liability insuring the liabilities assumed in this Order, for products liability, contractors protective liability, where applicable, collapse or structural injury and/or damage to underground utilities, where applicable, and coverage for damage to property in the Seller's custody, care and controls, as well as naming Buyer as an additional insured) in the amount of $3,000,000 combined single limit per occurrence, Comprehensive Automobile Liability – Bodily Injury/Property Damage covering all owned, hired and non-owned automotive equipment in the amount of $1,000,000 combined single limit each occurrence, Employers Liability in the amount of $1,000,000 each occurrence, Property Insurance covering the full value of all goods and services owned, rented or leased by Seller in connection with this Order, as well as appropriate Workers Compensation Insurance protecting Seller from all claims under any applicable Worker's Compensation and Occupational Disease Act. Coverage similar to Workers Compensation and Employers' Liability shall be obtained for each local employee outside the United States where work in connection with this Order is performed. Upon request, Seller shall furnish Buyer a Certificate of Insurance completed by its insurance carrier(s) certifying that insurance coverages are in effect and will not be canceled or materially changed except ten days after Buyer's written approval. Seller hereby waives subrogation. All insurance specified in this section shall contain a waiver of subrogation in favor of Buyer, its subsidiaries, affiliates and their respective employees for all losses and damages covered by the insurances required in this section, including coverage for damage to Buyer's property in the Seller's care, custody or control.

15.     **ASSIGNMENT AND SUBCONTRACTING.**  Seller may not assign (including by change of ownership or control) this Order or any interest herein including payment, without Buyer's prior written consent. Seller shall not subcontract or delegate performance of all or any substantial part of the work called for under this Order without Buyer's prior written consent. Should Buyer grant consent to Seller assignment or subcontract, such assignee or subcontractor shall be bound by the terms and conditions of this Order. Further, Seller shall advise Buyer of any subcontractor or supplier to Seller: a) that will have at their facility any parts or components with Buyer's, or any of its affiliates or subsidiaries, name, logo or trademark (or that will be responsible to affix the same); and/or  b) 50% percent or more of whose output from a specific location is purchased directly or indirectly by Buyer.  In addition, Seller will obtain for Buyer, unless advised to the contrary in writing, written acknowledgement by assignee, subcontractor and/or supplier to Seller of its commitment to act in a manner consistent with Buyer's integrity policies, and to submit to, from time to time, on-site inspections or audits by Buyer or Buyer's third party designee as requested by Buyer. Buyer may assign this Order to any affiliate, subsidiary or parent company upon notice to Seller. If Seller subcontracts any part of the work outside the country of purchase, Seller shall be responsible for Customs formalities to the country of Order placement unless the Order INCOTERMS state otherwise and Buyer may direct contract of carriage. Seller shall agree with Buyer on a mutually acceptable Customs Broker; however, Seller shall in no way be relieved from its responsibilities for Customs formalities, including the actions of the selected Customs Broker.

16.     **PROPER BUSINESS PRACTICES.**  Seller shall act in a manner consistent with Buyer's integrity policies, a copy of which have been provided to Seller, all laws concerning improper or illegal payments and gifts or gratuities, and agrees not to

| P28A-AL-0003 REV. E | **g** *GE Power Systems* | Page 7 of 11 |
|---|---|---|

pay, promise to pay or authorize the payment of any money or anything of value, directly or indirectly, to any person for the purpose of illegally or improperly inducing a decision or obtaining or retaining business in connection with this Order. Further, in the execution of its obligations under this Order, Seller shall take the necessary precautions to prevent any injury to persons or to property.

**17.   COMPLIANCE WITH LAWS**

17.1    *General.* Seller represents, warrants, certifies and covenants that it will comply with applicable provisions of any federal, state, provincial or local law, regulation, directive or ordinance and all lawful orders, rules, and regulations issued thereunder, in the country of intermediate and/or final delivery of goods or provision of services, including without limitation those dealing with environmental health and safety, and records retention. Seller shall also comply with good industry practices, including the exercise of that degree of skill, diligence, prudence and foresight which can reasonably be expected from a competent Seller who is engaged in the same type of service or manufacture under similar circumstances in a manner consistent with all applicable requirements and with all applicable generally recognized international standards. No forced or prison labor, or labor in violation of minimum working age law in the country of manufacture, may be used in connection with this Order. If forced or prison labor, or labor below applicable minimum working age, is determined to have been used in connection with this Order, Buyer shall have the right to immediately terminate the Order without further compensation. Seller agrees to cooperate fully with audit or inspection efforts of Buyer intended to verify compliance by Seller with Sections 16 or 17 of this Order. Seller further agrees to provide at Buyer's request certificates relating to any applicable legal requirements or to update any and all of the certifications, representations and warranties under this Order, in form and substance satisfactory to Buyer.

17.2    *EHS/MBE/WBE.* Seller represents, warrants, certifies and covenants that it will take appropriate actions to provide a safe and healthy workplace, and to protect local environmental quality; and, has established an effective program to ensure any suppliers it uses under this Order will be in conformance with section 17 of this Order. In addition, Seller shall comply with any provisions, certifications (including updates), representations, agreements or contract clauses required to be included or incorporated by reference or operation of law in the Order dealing with applicable provisions of the following laws and related regulations: i) Equal Opportunity (Executive Order 11246 as amended by Executive Orders 113575 and 10286); ii) Employment of Veterans (Executive Order 11701); iii) Employment of the Handicapped (Executive Order 11758 as amended by Executive Order 11867); iv) Employment Discrimination Because of Age (Executive Order 11141); v) Utilization of Disadvantaged and Minority Business Enterprises (Executive Order 11625, Public Law 95-507); vi) Occupational Safety and Health Act (OSHA) including OSHA regulations 29 CFR 1910.1200 accompanied by a completed Material Safety Data Sheet (OSHA Form 20) and mandated labeling information and vii) Section 211 of the Energy Reorganization Act, 10 CFR 50.7 (Employee Protection) and 29 CFR 24.2 (Obligations and Prohibited Acts) prohibiting discrimination against employees for engaging in "protected activities", which include reporting of nuclear safety or quality concerns, and Seller shall immediately inform Buyer of any alleged violations, notice of filing of a complaint or investigation related to any allegation or complaint. Seller shall also comply with regulations governing the packaging, marking, shipping and documentation of hazardous material including those specified pursuant to 49 CFR, IMO and IATA. Seller certifies that, with respect to orders which exceed $10,000, it is in compliance with the requirements for nonsegregated facilities set in 41 CFR Chapter 60-1.8. Seller agrees to provide small and/or minority (including women)-owned business utilization and demographic data upon request. Seller warrants that each chemical substance constituting or contained in goods sold or otherwise transferred to Buyer is on the list of chemical substances compiled and published by the Administrator of the Environmental Protection Administration pursuant to the Toxic Substances Control Act (15 USC 2601 et seq), the Federal Hazardous Substances Act (P.L. 92-516) as amended, the European Inventory of Existing Commercial Chemical Substances (EINECS) as amended or the European List of Notified Chemical Substances (ELINCS) and lawful standards and regulations thereunder, or equivalent lists in any other jurisdiction to which Buyer informs Seller the goods will likely be shipped. Goods sold or transferred to Buyer will not include arsenic, asbestos, benzene, carbon tetrachloride, lead, cadmium or chemicals restricted under the Montreal Protocol unless Buyer agrees in writing. Seller represents that the goods were or will be produced in compliance with the Fair Labor Standards Act of 1938, as amended, including Section 12 (a).

17.3    *Anti-Dumping.* Seller represents, warrants, certifies and covenants that all sales made hereunder are made in circumstances that will not give rise to the imposition of new anti-dumping or countervailing duties under United States law (19 U.S.C. Sec. 1671 et seq.), European Union (Council Regulation (EC) No. 384/96 of December 22, 1995 and Commission Decision No. 2277/96/ECSC of November 28, 1996), or the law of any other country to which the goods may be exported. To the full extent permitted by law, Seller will indemnify, defend and hold Buyer harmless from and against any costs or expenses (including any countervailing duties which may be imposed and, to the extent permitted by law, any preliminary dumping duties that may be imposed) arising out of or in connection with any breach of this warranty. In the event that countervailing or anti-dumping duties are imposed that cannot be readily recovered from Seller, Buyer may terminate this Purchase Order with no

| P28A-AL-0003<br><br>REV. E | **g**<br>_GE Power Systems_ | Page 8 of 11 |
|---|---|---|

further liability of any nature whatsoever to Seller hereunder.   In the event that any jurisdiction imposes punitive or other additional tariffs on goods subject to this agreement in connection with a trade dispute or as a remedy in an "escape clause" action or for any other reason, Buyer may, at its option, treat such increase in duties as a condition of force majeure.

17.4      _Importer of Record and Drawback._  If goods are to be delivered DDP (INCOTERMS 2000) to the destination country, Seller agrees that Buyer will not be a party to the importation of the goods, that the transaction(s) represented by this Order will be consummated after importation and that Seller will neither cause nor permit Buyer's name to be shown as "importer of record" on any customs declaration.   Seller also confirms that it has Non-Resident importation rights, if necessary, into the destination country with the knowledge of the necessary import laws.  If Seller is the importer of record into the United States for any goods or services, including any component parts thereof, associated with this Order, Seller shall provide Buyer required documentation for Duty Drawback purposes which includes, but is not limited to, Customs Form 7552 entitled "Certificate of Delivery" properly executed as well as Customs Form 7501 "Entry Summary" and a copy of Seller Invoice.

17.5      _US Export Controls._       This Order and all items furnished by Buyer to Seller in connection herewith shall at all times be subject to the export control laws and regulations of the US including, but not limited to, 10 CFR Part 810 and U.S. Export Administration Regulations.   Seller agrees and gives assurance that no equipment, materials, services, technical data, technology, software or other technical information or assistance furnished by Buyer, or any product thereof, shall be exported or re-exported by Seller or its authorized transferees, if any, directly or indirectly, except to the consignee(s), if any, specified on this Order, unless in accordance with applicable US export laws and regulations.  Further, a Seller that is a non-US company or citizen agrees and gives assurance that no such export or re-export will be made without the prior explicit authorization, in writing, of Buyer in accordance with US export laws and regulations.  The aforesaid obligations shall survive any satisfaction, expiration, termination or discharge of any other contract obligations.

**18.          CONFIDENTIAL OR PROPRIETARY INFORMATION AND PUBLICITY.**  Seller shall keep confidential any technical, process, proprietary or economic information derived from drawings, 3D or other models, specifications and other data furnished by Buyer in connection with this Order and shall not divulge, directly or indirectly, such information for the benefit of any other party without Buyer's prior written consent.  Except as required for the efficient performance of this Order, Seller shall not use such information or make or permit copies to be made of such drawings, models, proprietary information, specifications, or other data without Buyer's prior written consent.  If any reproduction is made with prior written consent, notice referring to the requirements of the foregoing paragraph shall be provided thereon.  Upon completion or termination of this Order, Seller shall promptly return to Buyer all materials incorporating any such information and any copies thereof.  Any knowledge or information which Seller shall have disclosed or may hereafter disclose to Buyer, and which in any way relates to the goods or services offered by this Order (except to the extent deemed to be Buyer's Property as set forth in Section 4, above), shall not, unless otherwise specifically agreed to in writing by Buyer, be deemed to be confidential or proprietary, and shall be acquired by Buyer free from any restrictions (other than a claim for infringement), as part of the consideration for this Order and, notwithstanding any copyright or other notice thereon, Buyer shall have the right to use, copy, modify and disclose the same as it sees fit.  Seller shall not make any announcement, take or release any photographs (except for its internal operation purposes for manufacture and assembly of goods), or release any information concerning this Order or any part thereof or with respect to its business relationship with Buyer, to any third party, member of the public, press, business entity, or any official body except as required by applicable law, rule, injunction or administrative order, without Buyer's prior written consent.

**19.          INTELLECTUAL PROPERTY.**  Seller shall indemnify, defend and hold Buyer harmless from all cost and expenses related to any suit, claim or proceeding brought against Buyer or its customers based on a claim that any article or apparatus, or any part thereof constituting goods or services furnished under this Order, as well as any device or process necessarily resulting from the use thereof, constitutes an infringement of any patent, copyright, trademark, trade secret or other intellectual property right of any third party.  Buyer shall notify Seller promptly and give authority, information, and assistance (at Seller's expense) for the defense of same, and Seller shall pay all damages and costs awarded therein.  If use of said article, apparatus, part, device or process is enjoined, Seller shall, at its own expense and at its option, either procure for Buyer the right to continue using said article or apparatus, part, process or device, or replace same with a non-infringing equivalent.

**20.          SUPPLIER SECURITY AND CRISIS MANAGEMENT POLICY:**

20.1      Seller shall have and comply with a company security and crisis management policy, which policy shall be revised and maintained proactively and as may be requested by Buyer in anticipation of security and crisis risks relevant to the Seller's business.  To this end, Seller agrees that it will review the requirements of the Customs-Trade Partnership Against Terrorism ("C-TPAT") and that it will develop and implement a plan to enhance security procedures ("Security Improvement Plan") in accordance      with      the      recommendations      of      the      US      Customs      Service,      as      outlined      in      Exhibit      A      -

| P28A-AL-0003 REV. E | **g** *GE Power Systems* | Page 9 of 11 |
|---|---|---|

[http://www.customs.gov/xp/cgov/import/commercial_enforcement/ctpat/] - including such modifications to Exhibit A as may on occasion be prescribed by the US Customs Service. The Security Improvement Plan will include improvements in physical security, access control, procedural security, personal security, education and training awareness, and other areas, as appropriate.   At a minimum, in addition to implementing the US Customs Service security recommendations, the Security Improvement Plan shall identify, and require Seller's management and employees to take, the measures necessary to do the following:

    (a)   provide for the physical security of the people working on Seller's premises and others working for or on behalf of Seller;

    (b)   provide for the physical security of Seller's facilities and physical assets related to the performance of work, including, in particular, the protection of Seller's mission critical equipment and assets;

    (c)   protect from the loss of, misappropriation of, corruption of, and/or other damage to software related to the performance of work;

    (d)   protect from the loss of, misappropriation of, corruption of, and/or other damage to Buyer's and Seller's drawings, technical data, and other proprietary information related to the performance of work;

    (e)   provide for the prompt recovery -- including through preparation, adoption, and maintenance of a disaster recovery plan -- of facilities, physical assets, software, drawings, technical data, other intellectual property, and the Seller's business operations in the event of a security breach, incident, crisis or other disruption of Seller's ability to use the necessary facilities, physical assets, software, drawings, technical data, or other intellectual property or to continue operations;

    (f)   ensure the physical integrity and security of all shipments against the unauthorized introduction of harmful or dangerous materials.

20.2     Within 90 days after the execution of this agreement, Seller shall

    (a)   certify to Buyer in writing that it has completed its written Security Improvement Plan and that it has put these procedures into place

    (b)   upon request of Buyer, provide a written copy of the Security Improvement Plan;

    (c)   maintain in a single location all manuals, reports and other records related to the Security Improvement Plan; and

    (d)   identify an individual contact (name, title, location and email/telephone/fax numbers) responsible for Seller's facility, personnel, and shipment security measures.

    (e)   inform Buyer of its C-TPAT membership status and its anticipated schedule for participation in C-TPAT.

Where Seller does not exercise control of manufacturing or transportation of goods destined for delivery Buyer or its customers in the US, Seller agrees to C-TPAT security recommendations to its suppliers and transportation providers and to condition its relationship to those entities on their implementation of such recommendations.  Further, upon advance notice by Buyer to Seller and during Seller's normal business hours, Seller shall make its facility available for inspection by Buyer's representative for the purpose of reviewing Seller's compliance with the security recommendations of the US Customs Service and with Seller's written Security Improvement Plan.   Each party shall bear its own costs in relation to such  inspection and review.  All other costs associated with development and implementation of Seller's Security Improvement Plan and C-TPAT membership shall be borne by the Seller.   If Buyer reasonably determines that Seller's policy and/or policy implementation is/are insufficient to satisfy United States Customs Service recommendations and/or protect Buyer's property and interests, Buyer may give Seller notice of such determination. Upon receiving such notice, Seller shall have forty-five (45) days thereafter to make the policy changes and take the implementation actions reasonably requested by Buyer.  Seller's failure to take such actions shall give Buyer the right to terminate this purchase order immediately without further compensation to Seller.

**21.**     **PACKING, PRESERVATION AND MARKING.**  Packing, preservation and marking will be in accordance with the specification drawing or as specified on the Order, or if not specified, best commercially accepted practice will be used, and at a minimum consistent with applicable law.  The Country of Origin for all goods shipped across international borders shall be marked in a conspicuous location as legibly, indelibly and permanently as the nature of the article or container will permit, so as to clearly indicate to Buyer and Customs the origin of the goods.  The gross and net weight, shipping address, mode of packing, and in case of over-dimensional shipment the hook-points, and stacking ability shall be marked on the packing.

| P28A-AL-0003 <br> REV. E | **g** <br> _**GE Power Systems**_ | Page 10 of 11 |
| --- | --- | --- |

**22.     GOVERNING LAW.**   This Order shall in all respects be governed by and interpreted in accordance with the substantive law of the State of New York, U.S.A., excluding its conflicts of law provisions. The parties exclude application of the United Nations Convention on Contracts for the International Sale of Goods.

**23.     DISPUTE RESOLUTION.**

23.1      If Seller is a permanent resident of the US, or a corporation or partnership existing under the laws of any of the US, Buyer and Seller shall attempt amicably to resolve any controversy, dispute or difference arising out of this Order, failing which either party may initiate litigation. Litigation may be brought only in the US District Court for the Southern District of New York or, if such court lacks subject matter jurisdiction, in the Supreme Court of the State of New York in and for New York County. The parties submit to the jurisdiction of said courts, and waive any defense of _forum non conveniens_.

23.2      If Seller is a permanent resident of a country other than the US, or is a corporation or partnership existing under the laws of any country other than the US, the parties shall attempt amicably to resolve any controversy, dispute or difference arising out of this Order, failing which either party may submit such dispute to arbitration in accordance with the Rules of Arbitration and Conciliation of the International Chamber of Commerce ("ICC"). Arbitration expenses shall be borne equally by the parties but each party shall pay its own attorneys' fees.  Venue for arbitration shall be London, England, and proceedings shall be conducted in the English language. The President of the ICC shall upon the request of either party make any appointment not timely made by the other party. The award shall be final and binding on both Buyer and Seller, and the parties hereby waive the right of appeal to any court for amendment or modification of the arbitrators' award.

**24.     COMPLIANCE WITH DATE PROCESSING REQUIREMENTS**

24.1      Seller represents and warrants that all goods and/or services and any enhancements, upgrades, customizations, modifications, maintenance and the like ("goods/services") shall at delivery and all times thereafter, and in all subsequent updates or revisions of any kind, accurately process, provide and/or receive date data, including without limitation calculating, comparing, sequencing, and performance of leap year calculations. In particular, Seller represents and warrants that: a) no value for current date will cause any error, interruption, or decreased functionality or performance of such goods/services; and b) all manipulations of date-related data by or through such goods/services (including calculating, comparing, sequencing, processing, and outputting) will produce correct results, without human intervention, for all valid dates, including when goods/services are used in combination with other products. As used in this paragraph, the words "date" and "dates" shall be deemed to include "time".

24.2      If at any time goods/services are found by Buyer or its customers to fail the foregoing warranty, then, in addition to any other available remedies, Seller shall at Buyer's option repair or replace any non-conforming goods/services, including, without limitation, installation of corrective changes or repairs, all at no cost to Buyer. Seller shall not require Buyer to make any changes to the goods/services (except for installation of corrective changes provided), shall not require or cause to be made any changes to Buyer 's data unless Buyer in its sole discretion approves such changes, and shall not require or cause to be made any changes to any other product or service used by Buyer.

**25.     WAIVER.** No claim or right arising out of a breach of this Contract can be discharged in whole or in part by a waiver or renunciation unless supported by consideration and made in writing signed by the aggrieved party.     Either party's failure to enforce any provisions hereof shall not be construed a waiver of a party's right thereafter to enforce each and every such provision.

**26.     ELECTRONIC COMMERCE.**   Seller agrees to participate in all Buyer's current and future electronic commerce applications and initiatives upon Buyer's request. For contract formation, administration, changes and all other purposes each electronic message sent between the Parties within such applications or initiatives will be deemed: a) "written" and a "writing"; b) "signed" (in the manner below); and c) an original business record when printed from electronic files or records established and maintained in the normal course of business.  The Parties expressly waive any right to object to the validity, effectiveness or enforceability of any such electronic message on the ground that a "statute of frauds" or any other law requires written, signed agreements.  Between the Parties, any such electronic documents may be introduced as evidence in any proceedings as business records originated and maintained in paper form.  Neither Party shall object to the admission of any such electronic document under either the best evidence rule or the business records exception to the hearsay rule. By placing a name or other identifier on any such electronic message, the party doing so intends to sign the message with his/her signature attributed to the message content. The effect of each such message will be determined by the electronic message content and by New York law, excluding any such law requiring signed agreements or otherwise in conflict with this paragraph.

| P28A-AL-0003<br>REV. E | **g**<br>*GE Power Systems* | **Page 11 of 11** |
|---|---|---|

27.      **ENTIRE AGREEMENT.** This Order, with documents as are expressly incorporated by reference, is intended as a complete, exclusive and final expression of the parties' agreement with respect to such terms as are included herein. This Order may be executed in one or more counterparts, each of which shall for all purposes be deemed an original and all of which shall constitute the same instrument. Facsimile signatures on such counterparts are deemed originals. No course of prior dealings and no usage of the trade shall be relevant to determine the meaning of this Order even though the accepting or acquiescing party has knowledge of the performance and opportunity for objection. The term "including" shall mean and be construed as "including, but not limited to", unless expressly stated to the contrary. The invalidity, in whole or in part, of any of the foregoing articles or paragraphs of this Order shall not affect the remainder of such article or paragraphs or any other article or paragraphs of this Order. All provisions or obligations contained in this Order which by their nature or effect are required or intended to be observed, kept or performed after termination or expiration of an Order will survive and remain binding upon and for the benefit of the parties, their successors (including without limitation successors by merger) and permitted assigns including, without limitation, Sections 4, 5, 8, 9,14, 17, 18, 19 and 24.