UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GENERAL ELECTRIC COMPANY,

                      Plaintiff,

  -against-                                 1:07-CV-1008
                                                  (LEK/DRH)
FEUZ MANUFACTURING, INC., GARY A.
FEUZ (Individually), WESLEY FEUZ (Individually),
and Other Officers, Directors, and Shareholders
of Feuz Manufacturing, Inc. Whose Identities
Are Currently Unknown

                      Defendants.
_____

**MEMORANDUM-DECISION AND ORDER[1]**

      Presently before the Court is a Motion to dismiss brought by Defendants Feuz Manufacturing, Inc. ("FMI") and Gary and Wesley Feuz (collectively "Defendants"). Dkt. No. 7. Defendants argue that Plaintiff General Electric Company ("Plaintiff" or "GE") has failed to state a claim under the Lanham Act, 15 U.S.C. § 1125(a)(1), that without the Lanham Act claim, this Court lacks subject matter jurisdiction over the state law claims, that the Complaint should be dismissed as against Wesley Feuz, that the Court should strike certain allegations from the Complaint, and that the Court should issue sanctions against Plaintiff pursuant to Fed. R. Civ. P. Rule 11. Def's Mem. (Dkt. No. 9).

**I.    Background Facts**

      GE's Complaint, filed on September 25, 2007, asserts a violation of the Lanham Act, 15 U.S.C. § 1125(a)(1), and state law claims for unfair competition, breach of contract, fraud,

---

[1] For printed publication in the Federal Reporter.

1

conversion, and theft of trade secrets, all based on alleged misappropriation of GE's intellectual property by FMI. Complaint at ¶¶ 39-57 (Dkt No. 1).

FMI is a former manufacturer of precision parts for GE and others. Id. at ¶ 13. GE alleges that Gary and Wesley Feuz were "key employees" during the time when FMI misappropriated GE's intellectual property. Id. at ¶ 4. As part of the commercial course of dealings between GE and FMI, GE periodically sent FMI engineering drawings and specifications containing proprietary and unique design information for parts FMI was manufacturing and selling to GE. Id. at ¶ 17. In 2004, GE learned that FMI was using GE's proprietary engineering drawings, specifications, and designs to manufacture and sell parts to GE's competitors. Id. at ¶ 26. In addition, GE discovered invoices which showed that FMI was selling parts to GE competitors that FMI had identified using GE's own part numbers. Id. at ¶ 29. GE also discovered an invoice from FMI to a GE competitor that attached a GE proprietary engineering drawing. Id. at ¶ 30. GE then confronted Gary Feuz and required FMI to, *inter alia*, correspond with its non-GE customers stating that FMI had agreed to "immediately cease and desist using GE's IP to assist in the manufacture of parts/products for Feuz's non-GE customers." Id. at ¶ 34, Exhibit F. FMI complied with GE's requirements and stated to GE in an email that they "will never again engage in the misuse of GE's property or use it in any unauthorized manner whatsoever." Complaint at ¶ 32, Exhibit E. GE ultimately terminated its business relationship with FMI. Complaint at ¶ 33.

In their Motion to dismiss, Defendants argue that GE's Lanham Act claim should be dismissed because it does not involve "goods or services" and there was no false designation of origin. Def's Mem. at 6-11 (Dkt. No. 9). These arguments are extended in the Defendants' Reply to argue that GE has not alleged any consumer confusion, that GE's attachments to its Complaint

contradict the Complaint and thus negate a finding of consumer confusion, and that the Lanham Act claim should be dismissed because the claim is in essence a breach of contract claim. Def's Reply Mem. at 1-5 (Dkt. No. 12).

Defendants also argue in their Motion to dismiss that without the Lanham Act claim, this Court lacks subject matter jurisdiction. Def's Mem. at 12 (Dkt. No. 9). Next, Defendants argue that the Complaint should be dismissed as against Wesley Feuz, in support of which Defendants attach an affidavit from Wesley Feuz stating that he was not a corporate officer, director or shareholder and further stating that he was not involved in any wrongdoing. Def's Mem. at 13-15. Defendants then seek to have the Court strike Paragraph 35 of the Complaint as irrelevant and immaterial. Def's Mem. at 16-17. Finally, Defendants request that the Court issue sanctions pursuant to Fed. R. Civ. P. Rule 11. Def's Mem. at 18.

## II.   Discussion

### A.   Standard of Review

For the purposes of a Rule 12(b)(6) motion to dismiss for failure to state a claim, all factual allegations in the Complaint are accepted as true, and all inferences are drawn in favor of the pleader. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir.1993). The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir.1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 235-36 (1974)). Accordingly, a motion to dismiss under Rule 12(b)(6) must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994) (internal quotations omitted).

Defendants have submitted an affidavit by Wesley Feuz in support of their argument that the Complaint should be dismissed as against him. Dkt. No. 7-2. Rule 12(b) of the Federal Rules of Civil Procedure requires that if matters "outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(b). However, if a court excludes extrinsic evidence submitted to it from its considerations, motions brought under Rule 12(b) do not need to be converted to motions for summary judgment. See Chambers v. Time Warner, Inc., 282 F.3d 147, 154 (2d Cir. 2002). On a motion to dismiss, a necessary prerequisite to a court's consideration of a document, other than the complaint, is a plaintiff's reliance on the terms and effect of that document in drafting the complaint. Chambers, 282 F.3d at 153. Defendants rely on Wesley Feuz's affidavit to the extent it asserts that he was not an officer, director or shareholder of FMI. However, Plaintiffs never alleged that Wesley was an officer, director or shareholder of FMI. In reaching its decision, the Court only considered the facts as presented in Plaintiff's Complaint and its attached exhibits, and has not considered Wesley's affidavit because there is no factual dispute that Wesley Feuz was not an officer, director, or shareholder of FMI.[2] Accordingly, Defendants' Motion will not be considered as a Motion for summary judgment.

B.   The Lanham Act Claim

The Lanham Act makes it unlawful for any person, in connection with goods, services, or containers for goods, to use in commerce "any word, term, name, symbol, or device, or any

---

[2] To the extent that Wesley Feuz's affidavit also asserts that he was not personally involved in any wrongdoing, that assertion is not relevant to the Court's analysis of the present Motion to dismiss. It would be inappropriate for the Court to grant summary judgment based solely on Wesley Feuz's self-serving affidavit at this point in the proceeding, before any discovery has taken place. See Madeira v. United Talmudical Acad., 351 F. Supp. 2d 162, 167 (S.D.N.Y. 2004).

combination thereof, or any false designation of origin . . . which . . . is likely to cause confusion . . . as to the origin, sponsorship, or approval" of the goods, services, or commercial activity. 15 U.S.C. § 1125(a)(1). "The hallmark of infringement in violation of this section is likelihood of confusion." Federal Exp. Corp. v. Federal Espresso, Inc., 201 F.3d 168, 174 (2d Cir. 2000).

       1.      Goods or Services

Initially, Defendants argue that the "instant controversy does not involve the misuse or misidentification of 'goods or services', as contemplated by statute." Def's Mem. at 6 (Dkt. No. 9). The Complaint, however, alleges that FMI falsely designated the origin of drawings and turbine parts that it sold to third parties, namely GE's competitors. See Complaint at ¶¶ 39, 40 (Dkt. No. 1).

Several cases have dismissed Lanham Act claims for not involving 'goods or services,' but those cases did not involve the same legal claim presented here. For example, digiGAN v. iVALIDATE, Inc. involved an alleged misrepresentation regarding ownership and rights to a patent and the Court noted that a patent is not a "good or service" under Section 43(a) of the Lanham Act. No. 02-Civ-420(RCC), 2004 WL 203010, at *5 (S.D.N.Y. Feb. 3, 2004). The Court in that case specifically noted that there were no misrepresentations in connection with the products themselves, and there was no alleged sale of goods associated with the misrepresentation. Id. In the present case, however, the alleged misrepresentation directly involves the drawings and parts that FMI sold to its customers.

In contrast, the Court in Mapinfo Corp. v. Spatial Re-Engineering Consultants declined to dismiss plaintiff's Lanham Act claim for false designation of origin. 2004 WL 26350, at *4-5 (N.D.N.Y. Jan. 5, 2004). The Court in that case found that the claim was supported by allegations that, after the termination of the partnership, the former partner continued to represent to consumers

5

that it was authorized to sell licences for the plaintiff's products. Id.

In this case, GE has alleged that FMI falsely designated the origin of drawings and turbine parts that it sold to third parties, namely GE's competitors. See Complaint at ¶¶ 39, 40 (Dkt. No. 1). These allegations are sufficient to state a claim under Section 43(a) of the Lanham Act.

### 2. False Designation of Origin and Consumer Confusion

Defendants next argue that there is no false designation of origin and no consumer confusion because (1) the Complaint does not allege that the competitors believed "that the parts they were purchasing derived from a non-GE drawing" and because (2) exhibits to the Complaint "make[] clear" that competitors were "fully aware that they were purchasing parts which were derived from GE's drawings, rather than some drawing created by FMI." Def's Mem. at 8.

GE alleges in their complaint that FMI falsely represented that GE's drawings, specifications, and designs belonged to FMI. Complaint at ¶¶ 39, 40 (Dkt. No. 1). A factual argument that GE's competitors did not believe the parts they purchased were derived from a non-GE drawing is inappropriate at this stage of the proceedings. At an appropriate time, FMI might well be able to prove that consumer confusion was unlikely. But on a motion under Rule 12(b)(6), the inquiry is into the sufficiency of the pleading, not of the evidence. The allegations in GE's Complaint satisfactorily assert a claim for false designation of origin. See Complaint at ¶¶ 39-40.

### 3. Effect of Breach of Contract Claim

Defendants argue that GE's Lanham Act claim should be dismissed because it is "premised upon breach of contract, rather than the Lanham Act." Def's Reply Mem. at 5 (Dkt No. 12). Defendants have cited no case law suggesting that GE cannot maintain both a Lanham Act claim and a claim for breach of contract if both are sufficiently alleged although based on overlapping

6

facts, and the Court does not find any case law suggesting so. Although courts have dismissed Lanham Act claims where the real issue in the case involved a breach of contract or other claim rather than a false designation of origin claim, courts in this district have also repeatedly maintained Lanham Act claims alongside breach of contract claims. Compare Stancato v. Versace, 1995 U.S. Dist. LEXIS 10324 (S.D.N.Y. 1995) (dismissing Lanham Act claim where issue in lawsuit for payments under a contract which assigned trademark rights to defendant was which party owned the trademark rights), and AAMCO Transmissions, Inc. v. Smith, 756 F. Supp. 225, 227 (E.D.Pa. 1991) (dismissing Lanham Act claim where the sole allegations in the complaint were based on plaintiff being defrauded into making payments it wasn't required to make under the contract), and Silverstar Enterprises v. Aday, 537 F. Supp. 236 (S.D.N.Y. 1982) (dismissing Lanham Act claim where dispute over terms of license agreement arose from contract and neither party sought "to protect a trademark from unscrupulous use in the marketplace"), with Member Services, Inc. v. Sec. Mut. Life Ins., 2007 WL 2907520 (N.D.N.Y. Oct. 3, 2007) (addressing discovery issue in case alleging both false designation of origin claim and breach of contract claim) and Mapinfo Corp. v. Spatial Re-Engineering Consultants, 2004 WL 26350, at *3-5(maintaining Plaintiff's Lanham Act claim and breach of contract claim).

     GE's Lanham Act claim is based on FMI's alleged misrepresentation to its non-GE customers that it was authorized to sell and/or distribute GE drawings and parts, and thus is not based solely on GE's contract with FMI. GE's breach of contract claim is a separate claim based on FMI's misuse of GE's intellectual property. GE may seek to enforce its contract with FMI while also maintaining its claim under Section 43(a) of the Lanham Act, which is meant "to prevent customer confusion regarding a product's source or sponsorship." Chambers, 282 F.3d at 156.

Because GE's Lanham Act claim is not based solely on GE's contract with FMI, the Lanham Act claim does not need to be dismissed on this ground.

  C. Subject Matter Jurisdiction

Because the Lanham Act claim is not dismissed, the Court has federal question jurisdiction over the action and retains supplemental jurisdiction over GE's state law claims.

  D. Personal Liability of Wesley Feuz

Defendants move to dismiss the Complaint as against Wesley Feuz, contending that he cannot be personally liable because he was not an officer, director or shareholder of FMI. GE has asserted five causes of action against Wesley Feuz: Lanham Act violation, unfair competition, fraud, conversion, and theft of trade secrets. See Complaint at ¶¶ 39-57 (Dkt No. 1). GE alleged that Wesley Feuz was a "key employee[] of FMI", acted as agent for and in concert with FMI, acted for and on behalf of FMI, was a "controlling figure[] in FMI," was "instrumental in causing the infringements of protected GE proprietary information by FMI, and [] personally participated in and exercised dominion and control over FMI in its unlawful and tortion [sic] acts." Id. at ¶¶ 4, 7. GE does not allege that Wesley Feuz was an officer, director or shareholder of FMI.

An employee may be held personally liable for his own torts, even if they were performed in the scope of his employment. Katara v. D.E. Jones Commodities, Inc., 835 F.2d 966, 972 (2d Cir. 1987); Powe v. Miles, 407 F.2d 73, 82 (2d Cir. 1968 ("[a]n agent is normally liable for his own torts"). The language of the Lanham Act is also not limited to officers, directors or shareholders, but holds that "[a]ny person" violating its provisions may be held liable. 15 U.S.C. § 1125(a).[3]

---

[3] Indeed, it has long been the case that for "torts of misfeasance, like the violation of a trade-mark, *agents and servants* are personally liable to the injured party." Saxlehner v. Eisner, 140 F. 938, 941 (C.C.S.D.N.Y. 1905) (quoting Estes v. Worthington, 30 F. 465 (C.C.S.D.N.Y.1887)).

Courts have interpreted the language of the Lanham Act to impose liability even on individuals who were not officers, directors or shareholders, by considering the level of the individual's personal involvement in any alleged Lanham Act violation in order to determine their personal liability.  "*An individual* is personally liable for a trademark infringement if he or she is a "moving active conscious force" behind the [company's] violation of the Lanham Act." PGC Property v. Wainscott/Sagaponack Property Owners, Inc., 250 F. Supp. 2d 136, 144 (E.D.N.Y. 2003) (quoting Proctor & Gamble Co. v. Quality King Distributors, 123 F.Supp.2d 108, 117 (E.D.N.Y. 2000)) (emphasis added).  The court in PGC Property declined to dismiss the complaint even though it "did not identify any particular individual defendant as having any right or ability to supervise the allegedly infringing activity or having a direct financial interest." Id.  ("Because the nature and extent of each of the individual defendants and TWC's participation in the alleged infringement is unclear and there has not yet been discovery, the Court declines to dismiss the action against them at this juncture.").  Similarly, in Martal Cosmetics, Ltd. v. International Beauty Exchange, Inc., the court analyzed the non-officer defendant's personal liability in terms of whether he was an "active force" in the infringing conduct.  No. CV-01-7595, 2007 WL 895697, at *24 (E.D.N.Y. March 22, 2007).

The case law is thus clear that both "[c]orporate officers *and employees* may be held personally liable for personal torts committed in the performance of their duties to the corporation." Model Imperial Supply Co., Inc. v. Westwind Cosmetics, Inc., 808 F. Supp. 943, 946 (E.D.N.Y. 1992) (maintaining claims including false designation of origin claim against non-officer employee based on unclear personal role in alleged violations) (citations omitted) (emphasis added);

---

(emphasis added).

Monsanto Co. v. Haskel Trading, Inc., 13 F. Supp. 2d 349, 354 (E.D.N.Y. 1998) (maintaining Lanham Act claims against non-officer defendant where individual defendant's role in violations was disputed).  see also Inwood Lab., Inc. v. Ives Lab., 456 U.S. 844, 854-55, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982) (finding it "undisputed that those pharmacists who mislabeled generic drugs with [the] registered trademark" violated the Lanham Act even though they were not officers, directors, or shareholders).

Even though Wesley Feuz was not an officer, director, or shareholder of FMI, he can nonetheless be held personally liable under the Lanham Act and for any state tort law violations. Accepting all factual allegations as true and drawing all inferences in favor of GE, it does not appear that "beyond doubt that [GE] can prove no set of facts in support of [its] claim which would entitle [it] to relief." Cohen v. Koenig, 25 F.3d 1168, 1172.  GE has alleged that Wesley Feuz was personally involved in the alleged violations, acted as an agent of FMI, was a "controlling figure[] in FMI," and was "instrumental in causing the infringements."  Those allegations are sufficient for the claims asserted against Wesley Feuz to proceed at this stage, since on a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir.1995).[4]

    E.    Motion to Strike

Defendants seek to strike paragraph 35 from the Complaint as irrelevant and immaterial,

---

[4] As noted previously, Wesley Feuz's assertion that he was not personally involved in any wrongdoing is not relevant to the Court's analysis of the present Motion to dismiss, and it would be inappropriate for the Court to grant summary judgment based solely on Wesley Feuz's self-serving affidavit at this point in the proceeding, before any discovery has taken place.  See Madeira v. United Talmudical Acad., 351 F. Supp. 2d at 167.

pursuant to Fed. R. Civ. P. 12(f). Rule 12(f) allows the Court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." The contested paragraph alleges that "[u]pon information and belief, in December 2004, FMI sold its physical plant, machinery, manufacturing and office space to VStream Manufacturing, Inc. for $3 million."

In deciding whether to grant a Rule 12(f) motion to strike "on the ground that the matter is impertinent and immaterial, it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." Lipskey v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir.1976). "Usually the questions of relevancy and admissibility in general require the context of an ongoing and unfolding trial in which to be properly decided. And ordinarily neither a district court nor an appellate court should decide to strike a portion of a complaint on the grounds that the material could not possibly be relevant on the sterile field of the pleadings alone." Id. (internal citations and quotations omitted).

Although FMI argues that the information in paragraph 35 of the Complaint regarding the sale of FMI "has absolutely no bearing upon any of the issues present in this litigation," Def's Mem. at 16 (Dkt No. 9), the existence and details of that sale may become relevant to, for example, the issue of damages. Accordingly, the relevancy and admissibility of the information submitted will be decided in the context of the ongoing discovery and unfolding trial. At this stage of the proceedings, the Court denies Defendants' motion to strike the information contained in paragraph 35 of the Complaint.

The Court also notes that Defendants filed this non-dispositive motion without complying with Local Rule 7.1's requirements that Defendants confer with the Plaintiff and request a conference with the Magistrate Judge prior to bringing the motion before the assigned Magistrate

Judge. The Court expects that Defendants will comply with the Local Rules in the future.

  F.  Rule 11 Sanctions

As part of their motion, Defendants have also requested that the Court impose sanctions on GE under Fed. R. Civ. P. 11 because they failed to dismiss the claims against Wesley Feuz despite "a dearth of authority to support the proposition" that he could be personally liable, thus requiring defendants to incur substantial costs in asserting the instant motion to dismiss. Def's Mem at 18 (Dkt. No. 9).

However, Defendants have failed to follow the proper procedure for moving for sanctions under Rule 11.[5] Rule 11(c)(1) requires that a motion for sanctions must be made separately from other motions or requests, and must be served on the offending party but not filed with or presented to the court unless, within 21 days after service of the motion, the challenged action is not withdrawn or corrected. FMI, in violation of this procedural rule, filed and served this Rule 11 sanctions request simultaneously with the Court and did so as part of its Motion to dismiss. As a result, the Court denies this request for relief.[6]

  G.  Local Rule 7.1(i) Sanctions

In its response, GE has requested that the Court impose sanctions on FMI and require FMI to compensate GE for the costs and attorneys' fees it incurred in opposing this motion, as provided for in Local Rule 7.1(i). GE has alleged that FMI's motion is "vexatious or frivolous" and "appears to

---

[5] The Court again notes that Defendants have failed to follow the Local Rule 7.1 requirement that the parties confer before bringing a non-dispositive motion and that they bring that motion before the assigned Magistrate Judge after a court conference with the Magistrate Judge.

[6] Having found that GE sufficiently alleged Wesley Feuz's personal liability, the Court notes that this request for sanctions also fails substantively.

have been interposed solely to delay GE from prosecuting this action". Plntf's Mem. in Opp. at 21 (Dkt. No. 10). The Court declines to impose sanctions at this time but warns the Defendants that they are expected to comply fully with Local Rules in the future. Future submissions which do not fully comply with Local Rule 7.1 may result in sanctions or be stricken from the Court's docket.

### III.  Conclusion

**WHEREFORE**, it is hereby

**ORDERED**, that Defendants' Motion to dismiss (Dkt. No. 7) is **DENIED** in its entirety; and it is further

**ORDERED**, that Plaintiff's request for sanctions pursuant to Rule 7.1(i) is **DENIED**; and it is further

**ORDERED**, that the Clerk serve a copy of this order on all parties.

**IT IS SO ORDERED.**

DATED:    May 15, 2008
          Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge